# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ALPHONSO MCPHERSON, | ) | Case No. 1:20-cv-00639 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge David A. Ruiz |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Alphonso McPherson, a pretrial detainee in the Cuyahoga County jail at all relevant times, brought this civil rights action alleging that various jail staff used excessive force against him and denied him adequate medical treatment. Four dispositive motions are before the Court. First, the County Defendants move to dismiss the claims against them under Rule 12(b)(6). (ECF No. 63.) Defendant Eric Ivey and Defendant Ken Mills each move to dismiss the claims against them in their individual capacities. (ECF No. 57 & ECF No. 61.) Finally, the MetroHealth Defendants move for judgment on the pleadings. (ECF No. 60.) For reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the County Defendants' motion; **GRANTS** the motions of Mr. Ivey and Mr. Mills; and **GRANTS IN PART AND DENIES IN PART** the MetroHealth Defendants' motion.

In addition, Defendant Nicholas Evans, a County employee, moved for leave to file a motion to dismiss the State-law claims against him. (ECF No. 74.) The request for leave is unopposed, and Mr. Evans's arguments for dismissal relate to the statute

of limitations on a particular claim that the County Defendants and Plaintiff fully briefed. Accordingly, the Court **GRANTS** Mr. Evans leave and considers his motion to dismiss timely filed. Because the grounds on which he seeks dismissal have been otherwise fully briefed, no further briefing is necessary, and the Court takes up his motion to dismiss along with the County Defendants' motion. For reasons that follow, the Court **GRANTS** Mr. Evans's motion to dismiss. Plaintiff also moves to certify a question to the Supreme Court of Ohio. (ECF No. 65; ECF No. 74-1.) For reasons that follow, the Court **DENIES** that motion.

## STATEMENT OF FACTS

Taking the facts alleged in the amended complaint as true and construing them in Plaintiff's favor, as the Court must on the motions before it, Mr. McPherson bases his claims on the following facts.

### A.    Plaintiff's Arrest

Mr. McPherson was arrested on March 2, 2018 and held in the Cuyahoga County jail as a pretrial detainee. (ECF No. 36, ¶ 23, PageID #795.) During his arrest, police officers fired at him, resulting in a gunshot wound to his left shoulder. (*Id.*) Plaintiff's open gunshot wound received some care when he was transported to the jail, but required further attention, including changing the dressing on the bandage. (*Id.*, ¶ 24.) Mr. McPherson requested additional care, which he did not receive, and his wound was not treated regularly. (*Id.*, ¶ 25.) His wound became infected by March 8 or 9, 2018. (*Id.*, ¶ 27, PageID #796.)

Plaintiff alleges overcrowding in the jail required him to sleep on the floor, increasing his risk of infection. (*Id.*, ¶ 26.) To draw attention to the lack of medical

care he received and the overcrowded conditions in the jail, Mr. McPherson eventually "became vocal and he physically remained stationary and refused to follow direction" from several Defendants, including Corrections Officers Boster Robert, Delmar Beckham, and Ralph Hannum, and Corporal Nicholas Evans. (*Id.*, ¶¶ 28–29.)

## B. Events Underlying Plaintiff's Claims

The events at the heart of Plaintiff's claims largely took place over two days in March 2018.

### B.1. The Events of March 8, 2018

On March 8, 2018, Defendants Sergeant Christopher Phillips, Corrections Officers Boster Robert, Delmar Beckham, and Timothy Brown, and Corporals Nicholas Evans, James Corso, and other unknown sergeants placed Mr. McPherson on suicide watch as an excuse to isolate him. (*Id.* ¶ 30, PageID #796–97.) Those Defendants forced him into an "ice cold" room and forcibly stripped him naked to punish him for complaining about the lack of medical care and other jail conditions. (*Id.*, ¶ 31.) Mr. McPherson informed these Defendants that he suffers from sickle cell anemia and that the cold room could trigger a painful sickle cell crisis for him. (*Id.*)

Once Mr. McPherson was naked, these Defendants used pepper or chemical spray on his face in further retaliation for his earlier complaints. (*Id.*, ¶¶ 33–34.) Then, they strapped Mr. McPherson in a restraint chair and left him for several hours without adequately rinsing the chemicals from his face or eyes so that his eyes burned for several days. (*Id.*, ¶¶ 35–36 & 39, PageID #797–98.) Plaintiff alleges Corporal Evans in particular used "unnecessary and unreasonable force in placing Plaintiff in

the restraint chair." (*Id.*, ¶ 38, PageID #798.) Cameras in the room presumably recorded these events. (*Id.*, ¶ 37.)

### B.2.   The Next Day (March 9, 2018)

The next day, on March 9, 2018, Corrections Officers Ralph Hannum, Brandon Smith, William Wacasey, Jermaine Clemente, and Antonio Brunell, an unknown employee, Corporal Robert Moore, and Sergeants James Kelley and one of the unknown sergeants repeated the same acts against Mr. McPherson as the day before. (*Id.*, ¶ 41–44, PageID #798–99.) Defendants Smith, Moore, Wacasey, and Kelly forced Plaintiff into the restraint chair. (*Id.*, ¶ 43.) Just as the day before, cameras presumably recorded these events. (*Id.*, ¶ 45.)

### B.3.   Continued Lack of Medical Care

Mr. McPherson did not receive any medical care while isolated on March 8 and 9, 2018. (*Id.*, ¶ 56, PageID #82.) After the encounter with the individual Defendants implicated in the March 8 incident, Defendants Grace LeGreca and Peggy Wheeler, who are both nurses at the jail, saw or interviewed Plaintiff; however, they either did not provide him medical care or failed to document or report that his gunshot wound required medical care. (*Id.*, ¶¶ 49–52, PageID #800–01.) Similarly, Corrections Officer Haden knew about the events on March 8 and 9, but did not report, investigate, or remedy the situation. (*Id.*, ¶¶ 53–54, PageID #801.)

Plaintiff also alleges the Sergeant and Corporal Defendants and Mr. Pinkney, Mr. Mills, Mr. Ivey, and Dr. Tallman knew about the other Defendants' conduct on March 8 and 9, but did not investigate the incidents or Plaintiff's complaint about the lack of medical care and bedding. (*Id.*, ¶ 71, PageID #806.)

## C. Additional Allegations of Violations at the Jail

Beyond the facts specific to Mr. McPherson, Plaintiff bases his amended complaint on other incidents constituting a pattern or practice of constitutional violations or other misconduct or mismanagement at the jail.

### C.1. Prior Similar Incidents

Plaintiff alleges other incidents similar to Mr. McPherson's experience occurred at the jail. (*Id.*, ¶ 91, PageID #813–15.) Only two of the other incidents described in the amended complaint occurred before March 2018. First, in January 2015, an inmate was forced to the ground, pepper sprayed, and forcibly placed in a restraint chair. (*Id.*, ¶ 91(A).) And in November 2017, an inmate was pepper sprayed and physically restrained by several corrections officers. (*Id.*, ¶ 91(I).) Plaintiff does not allege further factual details surrounding these incidents.

### C.2. Inspector General Report (February 12, 2019)

Attached to the amended complaint is a memorandum from the Cuyahoga County Inspector General to the Ohio Special Assistant Attorney General, dated April 25, 2019, attaching a report dated February 12, 2019. (ECF No. 36-5.) The Inspector General prepared the report to inform the Attorney General that his inspection of the jail revealed reasonable grounds to believe the jail violated State or federal laws, regulations, or policies. (*Id.*, PageID #852.) The Inspector General initiated the investigation in September 2018, several months after the incidents Mr. McPherson alleges violated his rights. (*Id.*, PageID #858.) But the report incorporates information from as early as 2012, including jail staffing numbers from

2014 to 2018, annual state inspection reports from 2012–2013 and 2015–2017, and annual Sheriff's Department reports from 2015–2017. (*Id.*, PageID #868.)

The Inspector General's report identifies several problems—and potential violations—at the jail. "Every year since 2012, the [jail]'s average daily prisoner population exceeded the level permitted by its certification." (*Id.*, PageID #859; *see id.*, PageID #878.) Meanwhile, the jail was continuously understaffed with corrections officers. (*Id.*, PageID #858.) Staff shortages often required corrections officers to work 16-hour shifts and detainees to be "red-zoned," a result of understaffing "that requires a single [corrections officer] to lock down and monitor multiple prisoner pods." (*Id.*)

The report also makes note of inadequate medical care, finding that "requests for medical care were allegedly delayed, ignored or deleted from the case tracking system without receiving care." (*Id.*, PageID #860.) The Inspector General places "primary responsibility for correcting management problems" on the "wardens, Regional Jail Director, and those who supervise them . . . ." (*Id.*) The report does not discuss excessive force within the jail, except to note that the jail was deemed compliant in that area by the 2016 and 2017 State inspections, but found unsatisfactory by the "2018 USMS Report"—a report of the United States Marshals Service post-dating the events involving Mr. McPherson. (*Id.*, PageID #914; *see also* ECF No. 36, ¶ 84, PageID #811.)

### C.3.   Alleged Policies, Practices, and Customs of the Jail

Plaintiff alleges that his experience at the jail was consistent with the jail's practices, policies, or customs. (*Id.*, ¶ 74, PageID #807.) Relying on the Inspector

General's report (ECF No. 36-5), Plaintiff claims Defendants had a policy whereby jail detainees were subject to denial of or delay in the delivery of medical care. (ECF No. 36, ¶ 81, PageID #810.) Further, Plaintiff alleges the County and jail managers had a policy of subjecting pretrial detainees to excessive force, punishment, or the denial or delay of medical care by failing to train jail staff. (*Id.*, ¶ 83, PageID #811.)

In addition to the Inspector General's report, Plaintiff supports his claims by referencing the results of a federal investigation of the jail the United States Marshals Service conducted between October and November 2018. (*Id.*, ¶ 84.) According to Plaintiff, the federal and Inspector General reports both demonstrate the jail had a custom, policy, and practice of using excessive force and failing to provide timely medical care to inmates. (*Id.*, ¶ 85, PageID #811.) Further, those involved in management of the jail at the County and MetroHealth and, in particular, Defendants Pinkney, Mills, Ivey, and Dr. Tallman ratified, acquiesced in, or approved these policies and practices. (*Id.*, ¶¶ 85 & 108, PageID #811–12 & 819.)

Other than the prior incidents and reports, Plaintiff claims the following support the existence of the alleged policies or customs: (1) concerns regarding jail conditions expressed in November 2018 by "a number of judges for the Court of Common Pleas for Cuyahoga County" (*id.*, ¶¶ 84 & 88, PageID #811–12); (2) Mr. Ivey's 2019 guilty plea to "obstruction of justice and falsification related to the performance of his duties at the Jail" (*id.*, ¶ 92, PageID #815); and (3) the November 2018 resignation and indictment of Mr. Mills (*id.*, ¶ 93). The Court notes that these additional facts all occurred after the alleged violations on March 8 and 9, 2018.

## STATEMENT OF THE CASE

Plaintiff filed the amended complaint on February 15, 2021. (ECF No. 36.) In his amended complaint, Plaintiff asserts seven claims against the following Defendants:

| Count | Claim | Defendants | ECF No. 36 |
|---|---|---|---|
| 1 | Denial and/or delay of medical care | All Defendants | ¶¶ 109–26, PageID #819–22 |
| 2 | Excessive force, punishment, & retaliation | County Defendants | ¶¶ 127–39, PageID #822–25 |
| 3 | Civil claim under R.C. § 2307.60 for criminal act of felonious assault in violation of R.C. § 2903.11(A)(1) & attempted felonious assault under R.C. § 2902.23 | Certain County Defendants involved in the March 8 and 9 incidents:<br>• James Kelley<br>• March 8 & 9, 2018 Unknown Sergeants<br>• Christopher Phillips<br>• James Corso<br>• Robert Moore<br>• Antonio Brunell<br>• Nicholas Evans<br>• March 9, 2018 Unknown Jail Employee<br>• Boster Robert<br>• Delmar Backham<br>• Timothy Brown<br>• Ralph Hannum<br>• Brandon Smith<br>• William Wacasey | ¶¶ 140–54, PageID #825–29 |
| 4 | Civil claim under R.C. § 2307.60 for criminal act of assault in violation of R.C. § 2903.13(A) & attempted assault under R.C. § 2902.23 | | ¶¶ 155–69, PageID #829–32 |
| 5 | Civil claim under R.C. § 2307.60 for criminal act of interfering with Plaintiff's civil rights in violation of R.C. § 2921.45(A) and the attempt to interfere with Plaintiff's civil rights under R.C. § 2923.02 | | ¶¶ 170–82, PageID #832–34 |
| 6 | Civil claim under R.C. § 2307.60 for criminal act of the restraint of Plaintiff's liberty in violation of R.C. § 2905.03(A) and the attempt | | ¶¶ 183–95, PageID #835–37 |

| | in the restraint of Plaintiff's liberty under R.C. § 2923.02 | • Jermain Clemente | |
|---|---|---|---|
| 7 | Civil claim under R.C. § 2307.60 for criminal act for dereliction of duty in violation of R.C. § 2921.44(C)(2) and for attempted dereliction of duty under R.C. § 2923.02 | | ¶¶ 196–201, PageID #837–39 |

On the basis of these claims, Plaintiff seeks compensatory and punitive damages, among other remedies.  (*Id.*, PageID #839–40.)

Defendants have submitted joint briefs according to the following table:

| Defendant Group | Defendants | Defendant's Role |
|---|---|---|
| County Defendants | Cuyahoga County | Operated Jail and Employed Most Defendants |
| | Clifford Pinkney (individual & official capacities) | County Sheriff |
| | Ken Mills (official capacity) | Regional Jail Director |
| | Eric Ivey (official capacity) | Associate Jail Warden |
| | James Kelley (individual capacity) | Jail Sergeant |
| | March 8 & 9, 2018 Unknown Sergeants (individual capacities) | Jail Sergeant |
| | March 9, 2018 Unknown Jail Employee (individual capacity) | Unknown |
| | Christopher Phillips (individual capacity) | Jail Sergeant |
| | James Corso (individual capacity) | Jail Corporal |
| | Robert Moore (individual capacity) | Jail Corporal |

| Defendant Group | Defendants | Defendant's Role |
|---|---|---|
| | Antonio Brunell (individual capacity) | Jail Corporal |
| | Nicholas Evans (individual capacity) | Jail Corporal |
| | Boster Robert (individual capacity) | Corrections Officer |
| | Delmare Beckham (individual capacity) | Corrections Officer |
| | Julius Haden, III (individual capacity) | Corrections Officer |
| | Timothy Brown (individual capacity) | Corrections Officer |
| | Ralph Hannum (individual capacity) | Corrections Officer |
| | Brandon Smith (individual capacity) | Corrections Officer |
| | William Wacasey (individual capacity) | Corrections Officer |
| | Jermain Clemente (individual capacity) | Corrections Officer |
| Eric Ivey | Eric Ivey (individual capacity) | Associate Jail Warden |
| Ken Mills | Ken Mills (individual capacity) | Regional Jail Director |
| MetroHealth Defendants | MetroHealth System | Healthcare Provider |
| | Dr. Thomas Tallman (individual & official capacities) | Director of MetroHealth Corrections Medical Program |
| | Peggy Wheeler (individual capacity) | Jail Nurse |
| | Grace Legreca (individual capacity) | Jail Nurse |

For purposes of resolving the pending motions, the Court considers Defendant Nicholas Evans as part of the County Defendants even though he is represented by different counsel.

## ANALYSIS

Before the Court are various dispositive motions under Rule 12(b)(6) and Rule 12(c). "The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Therefore, the same standard applies to all the dispositive motions now before the Court.

To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief

above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Accordingly, the Court's review at this stage of the proceedings includes the Inspector General and federal reports on which Plaintiff relies. *See Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 657 n.2 (6th Cir. 2021).

## I.     County Defendants' Motion to Dismiss

### I.A.     State Claims (Counts 3 through 7)

Counts 3 through 7 assert claims for civil liability for various criminal acts brought under Section 2307.60 of the Ohio Revised Code. The County Defendants and Mr. Evans argue that a one-year statute of limitations bars these claims. (ECF

No. 63, PageID #1134; ECF No. 74-1, PageID #1291–92.) Plaintiff argues the statute of limitations for such claims is not one year, but either four or six. (ECF No. 66, PageID #1204.) Alternatively, Plaintiff requests the Court certify the issue to the Ohio Supreme Court. (ECF No. 65.)

The Court recently considered the statute of limitations at issue and determined that a one-year limitations period governs claims brought under Section 2307.60 because nearly every Ohio court that has addressed the issue has determined the statute contemplates a penalty. *Brack v. Budish*, No. 1:19-cv-1436, ___ F. Supp. 3d. ___, 2021 WL 1960330, at *5 (N.D. Ohio May 17, 2021). In fact, no court has yet held otherwise. *Id.* Applied here, Plaintiff filed suit in State court on March 8, 2020. (ECF No. 1-1.) The alleged acts underlying Counts 3 through 7 occurred March 8 and 9, 2018. Accordingly, those claims fall outside the one-year limitations period of Section 2307.60 and are time-barred.

In *Brack*, the Court also denied the plaintiff's request to certify the question of the proper statute of limitations under Section 2307.60 to the Ohio Supreme Court. *Brack*, ___ F. Supp. 3d at ___, 2021 WL 1960330, at *5. The Court denies Plaintiff's motion to certify for similar reasons, namely that (1) no court has applied anything other than a one-year limitations period to claims under Section 2307.60; and (2) the Court cannot find that the issue satisfies the standard for certification the Ohio Supreme Court sets—that the issue may be determinative of the proceeding where Plaintiff has raised other claims. *See Brack*, ___ F. Supp. 3d at ___, 2021 WL 1960330, at *5–6.

Because these claims are time-barred, the Court need not address the County's argument for dismissal of Plaintiff's State-law claims on the basis of Ohio's Political Subdivision Tort Liability Act. (ECF No. 63, PageID #1121.)

## I.B.    Federal Claims

The County Defendants argue Counts 1 and 2 fail to state a claim. (ECF No. 63, PageID #1124–27.) These arguments focus primarily on the sufficiency of the allegations.

### I.B.1. Count 1

Count 1 asserts a claim under 42 U.S.C. § 1983, alleging all Defendants deprived Plaintiff of his constitutional rights to be free from cruel and unusual punishment, be protected, receive adequate medical care while incarcerated, and be protected from punishment while a pretrial detainee. (*Id.*, ¶ 111, PageID #819–22.)

#### I.B.1.a. Statute of Limitations

State law provides the applicable limitations period for Section 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). Because Congress did not provide a specific limitations period for claims under Section 1983, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall,* 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson*, 471 U.S. at 275–76). Under Ohio law, "an action based on a product liability claim and an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues." Ohio Rev. Code § 2305.10(A). This limitations period governs a Section 1983 claim here. *See*

*Williams v. Schismenos*, 258 F. Supp. 3d 842, 853 (N.D. Ohio 2017) (citation omitted); *Nadra v. Mbah*, 119 Ohio St.3d 305, 2008-Ohio-3918, 893 N.E.2d 829, ¶ 31.

Federal law, however, determines when a cause of action accrues and begins to run. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). Under federal law, the statute of limitations for a claim for failure to provide adequate medical care while detained accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action . . . ." *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990) (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)). Further, "a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.*

Plaintiff claims he was denied medical care for his gunshot wound starting on March 2, 2018 and from the application of pepper spray on March 8 and 9, 2018. He was aware of the gunshot wound on March 2, 2018 and the care he received (or did not receive) after that date, but did not bring this lawsuit until more than two years later on March 8, 2020. Therefore, Plaintiff's claim for denial or delay of medical care for his gunshot wound is time-barred.

On March 8 and 9, 2018, Plaintiff allegedly sustained new injuries caused by the alleged lack of medical care after the events of those dates. (*See* ECF No. 36, ¶ 117, PageID #820.) He filed claims relating to these injuries on March 8, 2020. Borrowing Ohio's statute of limitations, the time for filing suit expires on the two-year anniversary of the date of the incident—not 730 days later. *See Hall v. Ohio Dep't of Rehab. & Corr.*, No. No. 2:08-cv-530, 2009 WL 159157, at *2 n.2 (S.D. Ohio

Jan. 21, 2009) (citation omitted) (adopting magistrate judge's report and recommendation); *Combs v. Spence*, 5th Dist. Licking No. 2006CA0034, 2007-Ohio-2210, ¶ 19 (Ohio Ct. App.); *Thomas v. Galinsky*, No. 2003-G-2537, 2004-Ohio-2789, ¶ 16 (Ohio Ct. App.) (citation omitted). Therefore, the applicable statute of limitations does not bar Plaintiff's claim alleging inadequate medical care relating to the events of March 8 and 9, 2018.

### I.B.1.b. Deliberate Indifference

Next, the County Defendants argue Count 1 states a claim that is "improbable" because, according to the amended complaint itself, the Nurse Defendants treated Mr. McPherson on March 8 and 9, 2018. (ECF No. 63, PageID #1125.) "'Deliberate indifference' is the reckless disregard of a substantial risk of serious harm; mere negligence or even gross negligence, will not suffice." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Because Mr. McPherson concedes he received medical care, the County Defendants argue Plaintiff cannot meet this standard. (ECF No. 63, PageID #1125.)

But Plaintiff does not concede he received medical care on these dates. To the contrary, the amended complaint alleges that Defendants Grace LeGreca and Peggy Wheeler who are both nurses saw or interviewed Mr. McPherson after the events of March 8 or 9. (ECF No. 36, ¶¶ 49 & 51, PageID #800–01.) He pleads that each had subjective and objective knowledge from which they knew of the seriousness of his condition. (*Id.*, ¶ 49–50, PageID #800.) Construing the allegations in Plaintiff's favor, as the Court must on this motion to dismiss, Plaintiff's claims are not improbable. Accordingly, the Court declines to dismiss this claim on this ground.

### I.B.1.c. Threadbare Allegations

Finally, the County Defendants argue the amended complaint fails under the Rule 8 pleading standard because Plaintiff "does not explain how or when he requested medical care, who denied the treatment or the result of the denial of treatment." (ECF No. 63, PageID #1125.) Once again, the County Defendants read the amended complaint too narrowly. Plaintiff alleges those involved in the March 8 and 9 incidents, whom he identifies by name, knew of his medical condition and failed to treat him. That failure, Plaintiff avers, included a failure to take appropriate steps to decontaminate his eyes and face after the use of chemicals or pepper spray. Plaintiff also alleges he made specific complaints "at least to Defendants CO Hannum, CO Clemente, and CO Brunell," including that the temperature of the isolation room was dangerous to him and could trigger a sickle-cell attack. (ECF No. 36, ¶¶ 31, 37, 39, 41 & 45, PageID #797–99.) At this stage in the proceedings, Plaintiff need only allege a plausible set of facts that, if true, entitles him to relief. He has done so and sufficiently placed Defendants on fair notice of his claims.

### I.B.2. Count 2

Count 2 alleges that the County Defendants deprived Plaintiff of his constitutional rights to be free from cruel and unusual punishment, be protected, be free from the use of excessive and unreasonable force while incarcerated, and be protected from punishment and retaliation while a pretrial detainee. (*Id.*, ¶ 128, PageID #822.)

Under Section 1983, a pretrial detainee's claim of excessive force requires "that the force purposely or knowingly used against him was objectively unreasonable."

*Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).  Whether the force used against a pretrial detainee is objectively unreasonable "turns on the facts and circumstances of each particular case" as viewed "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Moderwell*, 997 F.3d at 661 (quoting *Kingsley*, 576 U.S. at 397 (cleaned up)).  Further, a person may have liability for failure to intervene to protect against excessive force where (1) "the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

The County Defendants argue Plaintiff failed to state a plausible failure-to-intervene claim because it is "[b]ased on vague and conclusory assertions." (ECF No. 63, PageID #1126.)  Further, they maintain that Plaintiff failed to identify who failed to intervene, how such person knew of the alleged constitutional harm, or how he or she could have prevented it.  (*Id.*)  Contrary to Defendants' argument, the amended complaint does not merely recite the elements of the claim.  In Count 2, Plaintiff identifies the specific Defendants who allegedly participated in the March 8 and 9 incidents.  (ECF No. 36, ¶ 135, PageID #824.)  Those who directly participated in the incidents would have direct knowledge of the harms alleged and had the means to prevent the harm from occurring.  Further, the amended complaint avers that Plaintiff directly complained about the lack of medical care to Corrections Officers Robert, Beckham, and Hannum, and Corporal Evans (*id.*, ¶ 28, PageID #796) and

that Corporal Officer Haden monitored Plaintiff while he was restrained on March 8 and 9, 2018 (*id.*, ¶ 53, PageID #801). These individuals, too, would have had knowledge of the harm and opportunity to intervene.

With respect to Defendants Pinkney, Mills, and Ivey, who did not directly participate in the alleged attacks, however, the amended complaint does not allege sufficient facts to infer they had an opportunity to intervene. All Plaintiff alleges against these Defendants is that there were cameras in the room where he was restrained and left alone "for a number of hours." (*Id.*, ¶¶ 37 & 45, PageID #798 & 799.) Even construing the allegations in Plaintiff's favor, this fact without more fails to give rise to even an inference that Defendants Pinkney, Mills, and Ivey, who did not directly participate in the alleged attacks, learned of the incidents through the cameras or otherwise in time to intervene.

Accordingly, the Court determines that Plaintiff adequately states a failure-to-intervene claim in Count 2 against the County Defendants except against Mr. Pinkney, Mr. Mills, and Mr. Ivey. Also, the County Defendants argue Plaintiff cannot establish a claim for conspiracy. (ECF No. 63, PageID #1126.) The Court does not address this argument because the amended complaint does not appear to assert a conspiracy claim.

### I.C. *Monell* Claims

Counts 1 and 2 raise claims under 42 U.S.C. § 1983 for alleged violations of Plaintiff's Fourteenth Amendment rights. (ECF No. 36, ¶¶ 111, 124, 128 & 137, PageID #819, 821, 822 & 824.) Plaintiff raises these claims against Cuyahoga County and other Defendants under *Monell v. Department of Social Services*, 436 U.S. 658

(1978). To be liable under *Monell*, the entity, "through its deliberate conduct," must have been "the 'moving force' behind the injury alleged" and have "intentionally" deprived the plaintiff of a federally protected right. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Local governing bodies can be sued under Section 1983 only where an official policy or custom causes the alleged constitutional violation. *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monell*, 436 U.S. at 690–91).

An official policy includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." *Johnson*, 908 F.2d at 1285 (quoting *Monell,* 436 U.S. at 690). In contrast, a custom "has not received formal approval through . . . official decisionmaking channels." *Id.* (quoting *Monell* at 690–91). "Before a custom can be the basis for a civil rights violation, the custom must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1004 (6th Cir. 1994) (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Monell*, 436 U.S. at 691)). Under *Monell* and its progeny, there are four ways a plaintiff can demonstrate a policy or custom that could allow for municipal liability:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess*, 735 F.3d at 478).

Plaintiff proceeds on theories of ratification, inadequate training or supervision, and a custom of tolerance or acquiescence. (ECF No. 66, PageID #1199.) Plaintiff alleges the County, Pinkney, Mills, and Ivey "had in place a policy by way of custom, practice and/or ratification . . . whereby [jail] detainees were subject to punishment . . . ." (ECF No. 36, ¶ 79, PageID #809.) The punishment includes using pepper spray "to retaliate against, punish, and abuse inmates indiscriminately, and to use such spray from an unsafe distance . . . ." (*Id.*, ¶ 86, PageID #812.) He also alleges a policy "by way of custom, practice and/or ratification" that subjected detainees "to the denial and/or delay in the delivery of medical care." (*Id.*, ¶ 81, PageID #811.)

The County Defendants do not appear to argue that the alleged conduct, if true, would not violate the Fourteenth Amendment. Taking the allegations as true, the Court assumes for purposes of this motion to dismiss that a constitutional violation occurred. Next, the Court addresses whether the amended complaint sufficiently alleges the County Defendants were the "moving force" behind this presumed constitutional violation under any of the three *Monell* theories alleged. *Fluker v. Cuyahoga Cnty.*, No. 1:19-cv-0318, 2019 WL 3718619, at *3–4 (N.D. Ohio Aug. 7, 2019).

### I.C.1. Ratification

Plaintiff argues the County ratified a custom or policy of providing inadequate medical care and using excessive force. An entity can be liable under *Monell* if a final policymaker ratifies a subordinate's decision and the basis for that decision. *Feliciano*, 988 F.2d at 656 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)

(plurality opinion)). An official is a final policymaker where the official's "decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Id.* at 655 (citing *Praprotnik*, 485 U.S. at 127).

Plaintiff alleges the County, Pinkney, Mills, and Ivey "at no time took any effective action and/or were deliberately indifferent in preventing" the alleged civil rights violations from occurring. (ECF No. 36, ¶ 94, PageID #815.) Further, he alleges they "failed to adopt a policy or practice to prevent the other Defendants from denying and/or delaying needed medical care and treatment to Plaintiff and from the use of excessive and unreasonable force against Plaintiff." (*Id.*, ¶ 98, PageID #817.) Through their alleged inaction, Plaintiff claims the County, Pinkney, Mills, Ivey, the Sergeant Defendants, and the Corporal Defendants ratified a policy "of physically punishing its inmates, including pretrial detainees and without just cause to use excessive, unwarranted force, and in the failure to provide timely medical care . . . ." (ECF No. 36, ¶ 85, PageID #811; *see also id.*, ¶ 74, PageID #807; ¶¶ 99–100, PageID #817.) According to Plaintiff, Defendants' failure to investigate the use of physical force, maintenance of unconstitutional conditions of confinement, and the denial or delay of medical care also "constitute[] a ratification" of this conduct. (*Id.*, ¶ 90, PageID #813.)

The County Defendants argue Plaintiff has not alleged an official policymaker ratified the alleged violations. (ECF No. 63, PageID #1120.) They focus on the alleged lack of investigation and argue Plaintiff's allegations are conclusory. (*Id.*, PageID #1120–21.) The Court disagrees. The amended complaint identifies Pinkney, Mills,

22

and Ivey as policymakers at the jail. (ECF No. 36, ¶¶ 17–18 & 79, PageID #793 & 809.) Their role as policymakers is plausible given their positions at the time as County Sheriff (Pinkney), Associate Warden (Ivey), and Regional Director (Mills). (*Id.*, ¶¶ 17–18, PageID #793.) Further, the conditions and findings of the Inspector General's report attached to the complaint (ECF No. 36-5) support Plaintiff's allegations that these alleged policymakers ratified the custom or policy of inadequate medical care that contributed to Plaintiff's alleged injuries. For example, the report indicates that a policy or practice of understaffing corrections officers and medical staff led to inadequate medical treatment of detainees. (*See id.*, 859–60.) Therefore, Plaintiff's claim may proceed on the ratification theory regarding the denial or delay of medical care.

But the report does not support Plaintiff's theory that Defendants ratified a policy of excessive force. It does not mention excessive force, except to note that the State inspection observed satisfactory compliance in that area in 2016 and 2017. (*Id.*, PageID #914.) Similarly, Plaintiff's allegations of two prior incidents involving the use of pepper spray fail to establish a policy by ratification because Plaintiff does not provide any factual detail to permit an inference that the earlier events amounted to excessive force. Accordingly, the other events alleged do not support his claim that an excessive force policy or custom was in place before the March 2018 violations. (ECF No. 36, ¶ 91(A) & (I), PageID #813 & 814.) Although the second of these alleged incidents in particular may support an inference of excessive force, the allegations in the amended complaint are sufficiently threadbare that the incident may also be

consistent with a proper use of force. Under the Rule 8 pleading standard, such competing inferences fail to raise the claim to the realm of plausible liability. *Twombly*, 550 U.S. at 555.

### I.C.2. Failure to Train or Supervise

Plaintiff also alleges the County's failure to train or supervise demonstrates a custom of failing to provide necessary medical care and using excessive force. A municipality is liable for failing to train or supervise where: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex. rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs*, 520 U.S. at 410. The Sixth Circuit "has identified two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise." *Pendergrass*, 455 F.3d at 700. First, the "foreseeable consequences that could result from a lack of instruction" may constitute deliberate indifference. *Id.* at 700–01 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). Second, liability may attach "where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Pendergrass*, 455 F.3d at 701 (quoting *Brown*, 172 F.3d at 931). At this stage of the proceedings, Plaintiff's inadequate medical care claim satisfies each.

Plaintiff alleges the County, Pinkney, Mills, and Ivey "had in place a policy by way of the failure to train its staff that subjects its pretrial detainee[s] to an environment of excessive force, punishment and/or the denial and/or delay in the delivery of medical care." (ECF No. 36, ¶ 83, PageID #811.) He attributes the denial or delay in medical care "to at least the failure of its staff to follow the proper chain of command, the lack of experience among [jail] staff, its management['s] display of contempt toward its correction officers, the failure to communicate [jail] policies, and by the failure of oversight in the CCCC jail facility." (*Id.*) These allegations have grounding in the report Plaintiff cites. (*Id.*, ¶ 77, PageID #808.) It is plausible that failing to train jail staff to follow the proper chain of command and follow jail policy led to the denied or delayed medical care Plaintiff alleges. Also, the report attached to the amended complaint supports the claim that Defendants disregarded a known or obvious consequence of failing to adequately train or supervise jail staff. (ECF No. 36-5, PageID #859–60.) Plaintiff's inadequate medical care claim may proceed on this theory. However, Plaintiff's claim regarding an excessive force policy again fails adequately to allege liability on this basis.

### I.C.3. Custom of Tolerance or Acquiescence

Finally, Plaintiff claims the County tolerated or acquiesced in the alleged violations by failing to address past similar misconduct. A municipal-liability claim premised on an inaction theory has four elements:

> (1) the existence of a clear and persistent pattern of violating federal rights (in this case, failing to request indigency hearings); (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of

inaction; and (4) that the defendants' custom was the 'moving force,' or direct causal link for the constitutional deprivation.

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694). The County Defendants argue Plaintiff's failure "to allege or provide facts describing instances of past similar misconduct" proves fatal to his inaction theory of liability. (ECF No. 63, PageID #1118.) The Court disagrees with respect to the medical care claim, but agrees with respect to the excessive force claim.

"[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations . . . ." *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (citation omitted). Plaintiff does allege prior incidents, but only two occurred before March 8 and 9, 2018. In the first, from January 2015, Plaintiff alleges an individual "was forced to the ground when a [jail corporal] directly spayed [sic] her face with pepper spray—after which [she]was forcibly placed into a restraint chair." (ECF No. 36, ¶ 91(A), PageID #813.) In the second, from November 2017, Plaintiff alleges a jail inmate "was pepper sprayed, restrained, and physically [*sic*] by several" corrections officers. (*Id.*, ¶ 91(I), PageID #814.) Neither of these alleged prior incidents allege delayed or denied medical treatment. Further, neither includes enough factual detail to infer the use of pepper spray or force was excessive or unreasonable. These two incidents, on their own, do not support the existence of an official policy regarding either inadequate medical care or excessive force.

In addition to the two alleged prior incidents, however, the amended complaint includes as an exhibit the County Inspector General's investigative report from February 2019, which is supported by information from as early as 2012. (ECF

26

No. 36-5.)  Plaintiff attributes the use of excessive force to "at least the overcrowding condition and understaffing," "inadequate planning related to the health and safety of its inmates," and "allowing deficiencies in the provisions of medical services" at the jail.  (ECF No. 36, ¶¶ 79–80, PageID #809–810.)  He attributes the denial or delay of medical care to "at least the failure of its staff to follow the proper chain of command, the lack of experience among [the jail's] staff, its management [sic] display of contempt toward its correction officers, the failure to communicate [jail] policies, and by the failure of oversight in the [jail] facility."  (*Id.*, ¶ 83, PageID #811.)

The amended complaint notes the Inspector General's findings of overcrowding, lack of oversight, and inexperienced jail staff, among other issues.  (*Id.*, ¶ 76–77, PageID #808.)  Plaintiff claims these same issues contributed to Defendants' treatment of him while detained.  (*Id.*, ¶ 80, PageID #810.)  Contrary to the County Defendants' arguments, Plaintiff's allegations of a policy that led to the alleged civil rights violation based on inadequate medical care are sufficiently specific and supported by facts and previous conduct found in the Inspector's report.  Plaintiff's *Monell* claim for inadequate medical care can proceed on this theory.  His *Monell* claim for excessive force is dismissed because the amended complaint and report do not support a finding that the jail had a pattern or practice of using excessive force.

### I.C.4. Official Capacity Claims Against Pinkney, Ivey, and Mills

According to the County Defendants, Plaintiff has not stated a valid claim against Defendants Pinkney, Ivey, and Mills in their official capacities.  (ECF No. 63, PageID #1131.)  "[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent."  *Everson v. Leis*, 556 F.3d

484, 493 n.3 (6th Cir. 2009) (quoting *Monell*, 436 U.S. at 690 n.55).  Because Plaintiff sued Cuyahoga County, the official-capacity suits against Mr. Pinkney, Mr. Ivey, and Mr. Mills are superfluous and are dismissed.  *Foster v. Michigan*, 573 F. App'x. 377, 390 (6th Cir. 2014).

Finally, the County Defendants argue that Plaintiff cannot recover punitive damages from the County or Pinkney, Mills, and Ivey in their official capacities. (ECF No. 63, PageID #1133.)  Plaintiff concedes he "has no punitive damages claims against Defendants Pinkney, Mills, Ivey, or Tallman in their official capacity or against Cuyahoga County."  (ECF No. 66, n.7, PageID #1199.)  Because the parties agree, the Court dismisses Plaintiff's claims for punitive damages against Cuyahoga County and Defendants Pinkney, Mills, Ivey, and Tallman in their official capacities.

## I.D.    Individual-Capacity Supervisory Claims

The County Defendants assert Mr. McPherson failed to plead a viable supervisor liability claim against Pinkney and the Sergeant and Corporal Defendants in their individual capacities for their failure to train or supervise.  (ECF No. 63, PageID #1128.)

### I.D.1. Direct Participation

A failure-to-train or supervise claim against an individual is narrower than one against a municipality.  *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).  In contrast to such a claim against a municipality, mere failure to act cannot establish individual liability.  *Id.* (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).  Instead, the individual must have "encouraged the specific incident of misconduct or in some other way directly participated in it."  *Id.* (quoting

*Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)). At the least, the individual must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Phillips*, 534 F.3d at 543).

Plaintiff alleges Defendant Pinkney and the Sergeant and Corporal Defendants were supervisory officers responsible for training the other Defendants, enforcing regulations, and ensuring compliance with State and federal laws. (ECF No. 36, ¶¶ 11, 16, & 18 PageID #790 & 793.) He alleges Sergeant Phillips, the Unknown Sergeants, and Corporals Evans and Corso participated in the events on March 8, 2018. (*Id.*, ¶ 30, PageID #796–97.) According to Plaintiff, Defendant Evans, with the help of the others, "forcibly applied pepper or other chemical spray to Plaintiff's face" and then forced him into a restraint chair and left him in a cold room, stripped naked. (*Id.*, ¶¶ 33, 35 & 38, PageID #797 & 798.) He alleges Sergeant Kelley, an Unknown Sergeant, and Corporals Moore and Brunell used excessive force against him and denied him adequate medical care on March 9, 2018. (*Id.*, ¶ 41, PageID #798–99.)

Plaintiff has sufficiently alleged a failure-to-train or supervise claim against Sergeants Phillips and Kelley, the Unknown Sergeants, and Corporals Evans, Corso, and Moore. According to the amended complaint, each directly participated in the constitutional violations alleged. But Plaintiff has not sufficiently stated an individual failure-to-train or supervise claim against Defendant Pinkney. The amended complaint does not allege that Pinkney directly participated in the conduct

giving rise to the alleged violations or "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Essex*, 518 F. App'x at 355 (quoting *Phillips*, 534 F.3d at 543). The Court addresses the claims against Mr. Ivey and Mr. Mills in their individual capacities separately below.

### I.D.2. *Moderwell v. Cuyahoga County*

Just before the close of briefing on the pending motions, the Sixth Circuit decided *Moderwell v. Cuyahoga County*, 997 F.3d 653 (6th Cir. 2021), another case alleging civil rights violations at the jail and involving many of the same Defendants as this case. There, the plaintiff brought individual-capacity supervisory liability claims against public officials that included Cuyahoga County Executive Armond Budish; County Sheriff Clifford Pinkney; George Taylor, who was Pinkney's immediate assistant; and Brandy Carney, the Cuyahoga County Chief Safety Protection Officer. Only one—Pinkney—is also a defendant here.

The *Moderwell* Court affirmed a ruling allowing the individual-capacity claims against these defendants to proceed past the pleading stage. Like some of Plaintiff's allegations here (*see, e.g.*, ECF No. 36, ¶¶ 74, 79 & 85, PageID #807, 809 & 811), *Moderwell* included claims that Pinkney "knew of a custom, propensity, and pattern" of jail officials "failing and/or refusing to provide prompt and competent access to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment, to detainees." *Moderwell*, 997 F.3d at 664. Nonetheless, the allegations in *Moderwell* and here materially differ, resulting in different outcomes with respect to Plaintiff's claims against Pinkney.

In *Moderwell*, the claims arose from the suicide of a detainee at the jail. Most of the allegations there related to the conditions of the decedent's confinement and the medical care, for mental health issues in particular, he received. In addition, *Moderwell* tied these allegations to implementation of a regionalization plan, which allegedly caused or contributed to the constitutional violations resulting in the detainee's suicide. The executives named as defendants in *Moderwell* played various roles in implementing that regionalization policy. In contrast, the amended complaint here makes no allegations regarding the regionalization plan. Although Plaintiff makes *Monell* claims regarding medical care, those claims are divorced from implementation of the regionalization plan and play out differently based on the different types of care at issue in *Moderwell* and here. At bottom, from case to case, whether any individual defendant may have liability for supervisory liability in his or her individual capacity depends on the particular allegations and, ultimately, proof at trial. *See Jackson v. Cuyahoga Cnty.*, No. 1:20-cv-02649, 2021 WL 2018853, at *7–8 (similarly distinguishing *Moderwell* and dismissing individual-capacity claims against jail supervisors, including Pinkney).

Because Plaintiff does not allege that Pinkney engaged in any specific conduct for which he can be held individually liable, dismissal of the individual-capacity claim against him is appropriate. *Moderwell* does not change that determination.

### I.E.    Claims Against Individual County Defendants

Plaintiff asserts Counts 1 and 2 against several County Defendants in their individual capacities. The County Defendants argue the allegations against the individual County Defendants are too generalized among all Defendants to avoid

dismissal. (ECF No. 63, PageID #1134.) The County Defendants acknowledge, however, that the conduct of Corporals Evans and Moore was sufficiently identified and do not seek their dismissal. (ECF No. 69, PageID #1246 n.2.)

As for the remaining individual Defendants, the Court determines that Plaintiff's allegations are not too generalized, if barely, with the exception of those regarding Pinkney. The amended complaint names which specific individual Defendants allegedly participated in the attacks on March 8 and 9. (ECF No. 36, ¶¶ 30, 41 & 53, PageID #796, 798–99 & 801). Plaintiff alleges the March 8 Defendants collectively pulled off his clothes, forcibly applied pepper spray to his face, and ineffectively rinsed his eyes. (*Id.*, ¶¶ 32–33 & 36, PageID #797.) Plaintiff alleges he complained to Corrections Officers Hannum, Clemente, and Brunell about the lack of medical treatment and jail conditions before March 9. (*Id.*, ¶ 41, PageID #798–99.) And he alleges Corrections Officers Smith and Wacasey, Corporal Moore, and Sergeant Kelley "excessively and forcefully placed Plaintiff in a restraint chair" on March 9. (*Id.*, ¶ 43, PageID #799.) Also, he alleges Corrections Officer Haden monitored Plaintiff after he was restrained on both dates. (*Id.*, ¶ 53, PageID #801.) At the very least, the amended complaint puts each individual Defendant on notice of the act(s) he allegedly participated in or performed and the date on which the events occurred.

Plaintiff does not adequately allege how Pinkney allegedly violated Mr. McPherson's constitutional rights in an individual capacity. Therefore, the Court dismisses the claims against Pinkney in his individual capacity.

### I.F.   Qualified Immunity

Based on the facts alleged, certain County Defendants assert that they enjoy qualified immunity against Plaintiff's claims under Section 1983 (Counts 1 & 2). (ECF No. 63, PageID #1130.)   Qualified immunity protects public officials against lawsuits for civil damages where their conduct does not violate the plaintiff's clearly established constitutional rights. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quotation omitted).   "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright v. City of BattleCreek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (cleaned up)).   Plaintiff bears the burden of establishing that qualified immunity does not bar suit. *Id.*

In evaluating a claim of qualified immunity, the Sixth Circuit directs that a district court undertake two inquiries, in no particular order.   First, a court determines whether the facts alleged make out a violation of a constitutional right. *Id.* (citing *Martin*, 712 F.3d at 957).   Second, the court asks if the right at issue was clearly established at the time such that a reasonable person would know that his conduct violated that right.   *Id.*   A plaintiff must satisfy each of these steps for his claim to proceed.   *Id.*   (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Under the law of this Circuit, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*,

779 F.3d 421, 433 (6th Cir. 2015). Although insubstantial claims should be decided at the earliest stage of litigation possible, that point usually arises at summary judgment. *Id.* 433–34.

### I.F.1. Clearly Established Right

At the time of the events at issue, the Fourteenth Amendment protected the right of a person in pretrial detention to be free from excessive force. *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (citing *Phelps v. Coy*, 286 F.3d 295, 299–300 (6th Cir. 2002)). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The Fourteenth Amendment also protects the right of pretrial detainees to receive necessary medical care that they otherwise cannot seek out because they are detained. *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 654 (S.D. Ohio 2004) (collecting cases). Under precedents such as these, any argument that Mr. McPherson did not have a clearly established right under the Fourteenth Amendment to receive medical care and be free from excessive force while detained lacks merit.

### I.F.2. Alleged Facts as to Excessive Force

A plaintiff can prevail on a claim of excessive force "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). This inquiry does not turn on the subjective intent of the officer involved; instead, the standard is objective, examining what a reasonable officer on the scene knew at the time. *Id.* at 397–98. In assessing

objective reasonableness, the Supreme Court identified the following additional considerations as a non-exhaustive list: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397. These considerations protect an officer who acts in good faith. *Id.* at 399.

On March 8, 2018, Plaintiff apparently was complying with orders to remove his clothes when Defendants forcibly removed them, restrained him, applied pepper spray, and left him in a restraint chair without thoroughly rinsing his eyes. (ECF No. 36, ¶¶ 32–35 & 41–44, PageID #797–99.) Defendants' alleged motivation for their conduct both days was that Plaintiff requested medical attention and complained about jail conditions. (*Id.*, ¶¶ 30 & 42, PageID #796 & 799.) Plaintiff admits he disobeyed orders in protest on or before March 8, but the amended complaint does not suggest he threatened any Defendant with force. The allegations show little relationship between the amount of force needed and the amount of force used. Also, Plaintiff does not allege Defendants attempted to temper the use of force, or that he actively resisted the officers. Considering these facts from an objectively reasonable officer's view, Plaintiff has alleged sufficient facts to survive Defendants' motion to dismiss based on qualified immunity on the excessive force claim at this stage of the proceedings.

### I.F.3. Alleged Facts as to Inadequate Medical Care

"Deliberate indifference to the serious medical needs of pretrial detainees normally constitutes a substantive due process violation." *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) (cleaned up). "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." *Id.* (quoting *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005). The amended complaint contains sufficient allegations that Defendants acted with deliberate indifference to survive dismissal. Plaintiff alleges he told the March 8 Defendants that the "ice cold" isolation room could trigger an attack of sickle cell anemia. (ECF No. 36, ¶ 31, PageID #797.) Also, Defendants left Plaintiff restrained without rinsing the pepper spray from his face and eyes. (*Id.*, ¶¶ 36 & 44, PageID #797 & 799.) Their failure to treat or address Plaintiff's injuries caused him pain for days afterward. (*Id.*, ¶¶ 39 & 46, PageID #798 & 800.) On these facts, the alleged failure to provide medical care was not objectively reasonable. Therefore, Defendants are not entitled to qualified immunity on that claim at this stage of the proceedings.

\*     \*     \*

In sum, Plaintiff's State-law claims in Counts 3 through 7 are time-barred as is Plaintiff's claim that he did not receive medical care for his gunshot wound. Plaintiff's claims for denied or delayed medical care (Count 1) may proceed against the County under *Monell*, but his claim against the County regarding excessive use of force (Count 2) may not. The official capacity claims against Pinkney, Mills, and

Ivey are dismissed because they duplicate Plaintiff's *Monell* claims. Counts 1 and 2 may proceed against the individual Defendants, with the exception of Pinkney.

## II.     Mill's and Ivey's Motions to Dismiss

Plaintiff also asserts Counts 1 and 2 against Mr. Ivey, the associate jail warden at the time of the events alleged, and Mr. Mills, the regional jail director. He alleges each is individually liable under Section 1983 for denying or delaying necessary medical care (Count 1) and for using excessive force (Count 2). They separately move to dismiss on two grounds. (ECF No. 57 & ECF No. 61-1.) First, they argue that the amended complaint does not contain sufficient factual allegations to state a claim for relief against Mr. Ivey and Mr. Mills in their individual capacities. Second, they claim qualified immunity.

To sustain a claim under Section 1983 against an individual, a plaintiff must show the individual is personally responsible for the alleged constitutional violation. *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). But the allegations related to the events on March 8 and 9, 2018 do not mention Mr. Ivey or Mr. Mills. Overall, the amended complaint only mentions the two Defendants in their roles as jail supervisors. Plaintiff's general references to the "Management Defendants" are too vague to hold either Mr. Ivey or Mr. Mills individually liable. Nor has Plaintiff alleged any other basis that either has individual liability.

Therefore, the Court agrees that the amended complaint fails to state a claim against Mr. Ivey and Mr. Mills in their individual capacities. Because Plaintiff's allegations against Mr. Ivey and Mr. Mills are insufficient to sustain a claim, the Court need not address their arguments concerning qualified immunity.

## III. MetroHealth Defendants' Motion for Judgment on the Pleadings

Plaintiff brings Count 1, denied or delayed medical care, against MetroHealth System, Dr. Thomas Tallman, and nurses Peggy Wheeler and Grace LeGreca.

### III.A. Claim Against Nurses

Defendants argue Plaintiff cannot establish that Ms. Wheeler and Ms. LeGreca, both nurses, were deliberately indifferent. (ECF No. 60, PageID #1066.) As discussed, "'[d]eliberate indifference' is the reckless disregard of a substantial risk of serious harm; mere negligence or even gross negligence, will not suffice." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Defendants argue Plaintiff has merely alleged he received inadequate medical care and that inadequate care or negligence does not rise to the level of deliberate indifference. (ECF No. 60, PageID #1067.)

The amended complaint does not allege Ms. Wheeler or Ms. LeGreca were aware of Mr. McPherson's need for medical care to his gunshot wound. Accordingly, Plaintiff's claim may not proceed against them on that theory. Otherwise, reading the amended complaint in Plaintiff's favor, he alleges Nurses Wheeler and LeGreca denied or delayed him medical care after the events of March 8 and 9. (ECF No. 36, ¶¶ 50–52, PageID #800–01.) Plaintiff alleges Ms. Wheeler and Ms. LeGreca knew about his serious medical condition after the alleged incidents and for some length of time did not provide him medical care. Defendants interpret the allegations to mean Plaintiff received some medical care and argue providing inadequate medical care falls far short of the standard for deliberate indifference. On a motion to dismiss, the Court must read the alleged facts in Plaintiff's favor, and Plaintiff pleads facts

alleging both nurses were aware of a serious medical condition and did not provide him medical care. Whether the evidence will ultimately support Plaintiff's claims presents a different question. Accordingly, Ms. Wheeler and Ms. LeGreca are not entitled to judgment on the pleadings.

The Court also determines Ms. Wheeler and Ms. LeGreca are not entitled to qualified immunity at this stage of the proceedings. The Court has already determined that pretrial detainees like Mr. McPherson have a clearly established right to receive necessary medical care. For the reasons discussed, Plaintiff alleges sufficient facts to show Ms. Wheeler's and Ms. LeGreca's conduct violated that right.

### III.B. Claim Against Dr. Tallman

Plaintiff asserts Count 1 against Dr. Tallman, director of the MetroHealth Corrections Medical Program, in his official and individual capacities. Plaintiff's claim against Dr. Tallman in his official capacity duplicates the claim against MetroHealth; therefore, the Court dismisses it. *Foster*, 573 F. App'x. at 390.

Regarding the individual capacity claim, Plaintiff argues that Dr. Tallman, as a policymaker and supervisor at the jail, implicitly authorized, approved, or knowingly acquiesced in subordinates' behavior that caused the alleged constitutional violations. (ECF No. 68, PageID #1224.) Other than his job title and general role as a supervisor, the amended complaint does not adequately link Dr. Tallman's conduct or knowledge of his subordinates' conduct to the alleged constitutional violations. The amended complaint does not give rise to an inference that Dr. Tallman "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" or nurses. *Essex*, 518 F. App'x at

355 (quoting *Phillips,* 534 F.3d at 543). Therefore, the Court grants judgment on the pleadings in favor of Dr. Tallman in his individual capacity.

### III.C.  Claim Against MetroHealth

Plaintiff alleges MetroHealth is liable for creating a custom or policy pursuant to which Plaintiff did not receive medical care. (ECF No. 36, ¶ 114, PageID #819.) Allegations of MetroHealth's liability hinge on Dr. Tallman's alleged role as a policymaker and ratification of deficient medical care, inadequate planning, and failure to train jail employees. (*See* ECF No. 68, PageID #1225–26.) Plaintiff argues the various reports cited in the amended complaint demonstrate these customs or policies and that Dr. Tallman ratified the denial or delay of necessary medical services by not acting. (*Id.*, PageID #1227.)

The amended complaint does not support Plaintiff's claim that MetroHealth is liable for a policy or established custom of withholding medical care. Plaintiff fails to state facts giving rise to an inference that the policies and customs alleged are MetroHealth's or Dr. Tallman's. The allegations that MetroHealth or Dr. Tallman ratified the County's alleged policies or customs are conclusory and unsupported by any meaningful factual allegations other than Dr. Tallman's association with MetroHealth and his position as director of the medical program at the jail. (*See, e.g.*, ECF No. 36, ¶¶ 20–21, 71, 74, 79, 85, 87, 89–90, 94, PageID #794, 806, 807 & 812–13, 815.) Plaintiff also alleges MetroHealth "tolerated the systemic denial or delay or medical care to [jail] inmates," but only supports his claim with vague reference to "conduct [that] historically existed in the [jail] at least since 2012 . . . ." (*Id.*, ¶ 96, PageID #816.) Further, MetroHealth is only mentioned in the Inspector General's

report as a partner of the jail that provides medical services. (ECF No. 36-5, PageID #866.) Accordingly, the amended complaint fails to state a claim against MetroHealth.

Finally, MetroHealth seeks judgment on the pleadings to the extent the amended complaint asserts an equal protection violation. (ECF No. 60, PageID #1069–70.) But the amended complaint makes clear that the equal protection violation alleged arises from the alleged discriminatory delay or denial of medical care and treatment as retaliation for Mr. McPherson's complaints. (ECF No. 68, PageID #1219.) In this respect, although the amended complaint asserts an equal protection violation, the Court reads that allegation as duplicative of Plaintiff's other claims. Because those other claims provide specific standards for evaluating Plaintiff's allegations regarding the delay or denial of medical care, and because Plaintiff fails sufficiently to develop his equal protection argument beyond that (*see* ECF No. 68, PageID #1219), the Court grants MetroHealth judgment on the pleadings on the equal protection claim and otherwise stands on its rulings above.

*     *     *

To summarize, Plaintiff's claim that Nurses Wheeler and LeGreca denied or delayed him medical care after the events of March 8 and 9 may proceed, but his claim that they denied him medical care to his gunshot wound may not proceed. The Court dismisses the claims against Dr. Tallman and MetroHealth System as well as Plaintiff's equal protection claim.

## IV.    Local Rule 7.1

Plaintiff raises one final procedural matter that bears on the motions at the pleading stage.  Plaintiff asks the Court to deny or strike the County Defendants' motion to dismiss and the MetroHealth Defendants' motion for judgment on the pleadings because neither complies with Local Rule 7.1(f).  (ECF No. 66, PageID #1183; ECF No. 68, PageID #1217.)  Plaintiff correctly points out that these briefs do not comply with the Local Rules.  Both motions are more than 15 pages but do not include the items Local Rule 7.1(f) requires for such memoranda.  Had Plaintiff raised this issue within a day or two of the filing of the offending briefs, the Court would have stricken them and provided Defendants a short period to comply with the Local Rules to afford the parties the opportunity to present the merits of their respective positions and have them decided.  Because the parties were able to brief the issues despite Defendants' noncompliance, the Court declines to deny or strike the motions at this point.  However, the Court admonishes the parties to comply in good faith with all applicable rules and the Court's civil standing order in the future.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the County Defendants' motion (ECF No. 63); **GRANTS** Mr. Evans's motions (ECF No. 74 & 74-1); **GRANTS** the motions of Mr. Ivey and Mr. Mills (ECF No. 57 & ECF No. 61); and **GRANTS IN PART AND DENIES IN PART** the MetroHealth Defendants' motion (ECF No. 60).  In the following table, the Court summarizes which claims may proceed against which Defendants (in their individual capacities) and which claims are dismissed:

| Count | Claim | Theory | Proceeds Against | Dismissed As To |
|-------|-------|--------|------------------|-----------------|
| 1 | Denial and/or delay of medical care | Care to gunshot wound | None | All |
| | | Care after March 8 & 9, 2018 | Cuyahoga County<br>James Kelley<br>March 8, 2018 Unknown Sergeants<br>March 9, 2018 Unknown Sergeants<br>Christopher Phillips<br>James Corso<br>Robert Moore<br>Antonio Brunell<br>Nicholas Evans<br>March 9, 2018 Unknown Jail Employee<br>Boster Robert<br>Delmar Beckham<br>Julius Haden, III<br>Timothy Brown<br>Ralph Hannum<br>Brandon Smith<br>William Wacasey<br>Jermain Clemente<br>Peggy Wheeler<br>Grace LeGreca | Dr. Tallman<br>MetroHealth Systems<br>Clifford Pinkney<br>Ken Mills<br>Eric Ivey |
| | | Equal Protection | None | All |

| Count | Claim | Theory | Proceeds Against | Dismissed As To |
|---|---|---|---|---|
| 2 | Excessive force, punishment, & retaliation | Excessive force on March 8 & 9, 2018 | James Kelley<br><br>March 8, 2018 Unknown Sergeants<br><br>March 9, 2018 Unknown Sergeants<br><br>Christopher Phillips<br><br>James Corso<br><br>Robert Moore<br><br>Antonio Brunell<br><br>Nicholas Evans<br><br>March 9, 2018 Unknown Jail Employee<br><br>Boster Robert<br><br>Delmar Beckham<br><br>Julius Haden, III<br><br>Timothy Brown<br><br>Ralph Hannum<br><br>Brandon Smith<br><br>William Wacasey<br><br>Jermain Clemente | Cuyahoga County<br><br>Clifford Pinkney<br><br>Ken Mills<br><br>Eric Ivey |
| 3–7 | Civil claims under R.C. § 2307.60 | | None | All |

**SO ORDERED.**

Dated:  July 8, 2021

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio